1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

8

EASTERN DISTRICT OF CALIFORNIA

9

10

TARA FAE ALEXANDER,

Case No. 1:19-cv-01208-SKO

Plaintiff,

11

12

v.

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

13

ANDREW SAUL,
Commissioner of Social Security,

14

Defendant.

(Doc. 1)

15

16

17

_____/

18

19

**I.      INTRODUCTION**

20

On September 9, 2019, Plaintiff Tara Fae Alexander ("Plaintiff") filed a complaint under 42

21

U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of

22

Social Security (the "Commissioner" or "Defendant") denying her applications for Disability

23

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security

24

Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which

25

were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate

26

Judge.[1]

27

28

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 6, 8.)

## II.    BACKGROUND

On January 11, 2017, Plaintiff protectively filed applications for DIB and SSI payments, alleging she became disabled on January 1, 2012, due to scoliosis, depression, "high arches on feet," and being a "[s]low learner."  (Administrative Record ("AR") 16, 95, 96, 225.)  Plaintiff was born on December 1, 1977, and was 34 years old as of the alleged onset date.  (AR 231.)  Plaintiff graduated high school, has past work experience as a fast-food worker, and can communicate in English.  (AR 26, 226.)

### A.    Relevant Medical Evidence[2]

#### 1.    Arundati Halappa, M.D.

On January 10, 2017, Plaintiff presented to Dr. Halappa to establish care after she recently received health insurance.  (AR 326.)  Upon examination, Plaintiff was found to have tenderness in her spine and moderate pain with motion.  (AR 327.)  Dr. Halappa assessed Plaintiff with chronic bilateral thoracic back pain, other chronic pain, and intellectual disability.  (AR 328.)  Plaintiff was prescribed baclofen and naproxen for her pain.  (AR 328.)  Later during her course of her care, Plaintiff was also prescribed hydrocodone/acetaminophen and ibuprofen.  (*See* AR 372.)

On January 30, 2017, Plaintiff appeared for an appointment stating she wanted to apply for permanent disability due to her back pain and problems.  (AR 333.)  In his treatment notes, Dr. Halappa made the following notation: "us works form filled.[ ]physically and mentally disabled for full time work."  (AR 334.)

On November 7, 2017, Plaintiff presented for anxiety after a woman at her apartment complex threatened her life.  (AR 407.)  Dr. Halappa noted that Plaintiff was anxious and fearful, but also oriented to the situation with appropriate mood and affect.  (AR 409.)  Dr. Halappa prescribed Lexapro for Plaintiff and advised her to follow up with counseling.  (AR 409.)

On May 22, 2018, Plaintiff had an appointment for her chest x-ray results.  (AR 442.)  Dr. Halappa noted that Plaintiff's back condition was stable, and he did not see her condition as

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1   disabling.  (AR 444.)  Dr. Halappa further noted that Plaintiff was "persistently asking for disability

2   for her back condition," but he declined to fill out the paperwork for disability.  (AR 444.)

3         On May 29, 2018, Dr. Halappa filled out a questionnaire on Plaintiff's behalf.  (AR 402.)

4   Dr. Halappa stated that Plaintiff had scoliosis and her primary impairments were mid- and lower-

5   back pain and chronic pain.  (AR 402.)  Dr. Halappa opined that the medical problems for which he

6   treated Plaintiff did not preclude her from performing any full-time work at any exertional level.

7   (AR 402.)  Dr. Halappa also assessed Plaintiff's physical residual functional capacity ("RFC")[3]:

8   Plaintiff could lift no more than 25 pounds for about two to three hours in an eight-hour day, sit for

9   four hours at one time without rest or support, stand and/or walk for four hours at one time without

10  rest or support, sit for six hours over an eight-hour workday, and stand and/or walk for six hours

11  over an eight-hour workday.  (AR 402.)  Dr. Halappa further opined that "due to chronic back pain,

12  [Plaintiff] needs breaks to rest her back."  (AR 402.)

13        **2.      Araceli Vigil, LCSW**

14        On  January  30,  2017,  Plaintiff  presented  to  Vigil,  a  licensed  clinical  social  worker

15  ("LCSW"), for an intake session.  (AR 336.)  LCSW Vigil recorded that Plaintiff presented with

16  symptoms of depression and anxiety.  (AR 336.)  On examination, Plaintiff was found to have an

17  anxious  mood  with  preoccupations  and  ruminations;  LCSW  Vigil  estimated  that  Plaintiff  had

18  average intelligence and found that her insight and judgment were within normal limits.  (AR 337–

19  38.)  Plaintiff was engaged and cooperative during the session.  (AR 337.)

20        On March 16, 2017, Plaintiff presented with an anxious mood and congruent affect.  (AR

21  354.)  Plaintiff was again engaged and receptive during the session, and reported that deep breathing

22  worked well for her anxiety and restlessness at bedtime.  (AR 354.)  Plaintiff also stated she could

23  see visual grounding techniques helping her when she was out in public.  (AR 354.)

24

25  _____

26  [3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
    setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social

27  Security Ruling ("SSR") 96-8p.  The RFC assessment considers only functional limitations and restrictions that result
    from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a

28  claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay
    evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable
    impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

On March 30, 2017, Plaintiff presented with euthymic mood and congruent affect.  (AR 362.)  Plaintiff reported some improvement, but continued to struggle with depression and anxiety symptoms.  (AR 362.)

On March 5, 2018, Plaintiff resumed therapy.  (AR 415.)  Plaintiff stated her anxiety and depression symptoms had been exacerbated due to recent news that she was at risk of losing her home and the death of her grandfather.  (AR 415.)  During the intake session, LCSW Vigil observed that Plaintiff's mood was depressed and anxious, and Plaintiff had depressive preoccupations and ruminations.  (AR 417.)  Plaintiff had logical thought process, average intelligence, and cognition, insight, and judgment within normal limits.  (AR 417.)

On April 17, 2018, Plaintiff appeared for the second part of her intake session.  (AR 429.)  Plaintiff reported mild improvement with Lexapro, but she still experienced residual symptoms.  (AR 433.)  Plaintiff told LCSW Vigil that she was no longer interested in a referral to a psychiatrist.  (AR 429.)  Plaintiff requested a letter of attendance for the session, and Plaintiff's fiancé Leo Sanchez asked LCSW Vigil to write Plaintiff a letter documenting Plaintiff's depression and anxiety symptoms, in addition to possible learning/intellectual disabilities.  (AR 429–30.)  LCSW Vigil informed Sanchez that the latter topic was beyond the scope of her practice, and she could write a letter pertaining only to Plaintiff's mental health symptoms.  (AR 430.)

On May 17, 2018, Plaintiff presented for a follow-up appointment with LCSW Vigil, and they prepared an individualized action plan for Plaintiff.  (AR 437–39.)

On June 5, 2018, LCSW Vigil submitted a one-page psychiatric medical source statement on Plaintiff's behalf.  (AR 403.)  LCSW Vigil opined that Plaintiff had "moderate" ability to maintain concentration and attention, withstand the stress and pressures associated with work activity, understand, remember, and carry out simple and complex instruction, and receive and carry out instructions from supervisors; and "mild" ability to deal with the public and relate and interact with co-workers.  (AR 403.)

### 3.  Golden Bear Physical Therapy

On March 1, 2017, Plaintiff started physical therapy for her back.  (AR 378–81.)  Her sessions continued through April 24, 2017.  (AR 382–400.)  Notes from her last visit indicated that

4

Plaintiff was "being discharged due to lack of self reported progress," and Plaintiff reported "no change" in pain levels with therapy.  (AR 399.)

### 4.   Consultative Examiner David Pingitore, Ph.D.

On March 18, 2016, Dr. Pingitore, a certified clinical psychologist, performed a psychological assessment of Plaintiff.  (AR 315–17.)  Upon examination, Dr. Pingitore found Plaintiff to be alert and well-oriented, with adequate judgment and immediate attention, variable to poor insight, and linear and goal-directed thought process.  (AR 316.) Dr. Pingitore noted that "there [wa]s likely poor effort and exaggeration of symptoms on cognitive testing during this examination."  (AR 317.)  Dr. Pingitore assessed Plaintiff with adjustment disorder with depressed mood and a learning disability (primarily verbal type).  (AR 317.)  According to Dr. Pingitore, Plaintiff understood most questions but responded with variable to poor performance; Plaintiff had adequate persistence and pace and communication skills; Plaintiff's socialization skills appeared impaired but only by self-report; Plaintiff would be able to respond appropriately to supervisors, coworkers, and the general public, and execute simple one and two-step commands.  (AR 317.)

### 5.   Consultative Examiner Dale Van Kirk, M.D.

On May 25, 2016, Dr. Van Kirk completed a comprehensive orthopedic evaluation of Plaintiff.  (AR 320–22.)  Upon examination, Dr. Van Kirk found that Plaintiff had full range of motion without pain or difficulty in the cervical spine, restricted range of motion in the dorsolumbar spine, and normal sensation and muscle strength in her extremities.  (AR 321–22.)

### 6.   State Agency Physicians

On February 23, 2017, W. Jackson, M.D., a state agency physician reviewed the record and assessed Plaintiff's physical RFC.  (AR 73–75, 88–90.)  Dr. Jackson opined that Plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal break) for six hours in an eight-hour workday; sit (with normal breaks) for six hours in an eight-hour workday; and occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl.  (AR 74.)  Dr. Jackson further opined that Plaintiff should avoid concentrated exposure to extreme cold and wetness due to her back pain.  (AR 74, 75.)  He also noted that Plaintiff had "the allegation of foot pain and the found allegation of scoliosis."  (AR 75.)

1   Upon reconsideration on June 9, 2017, another state agency physician, E. Wong, M.D., reviewed

2   the record and affirmed Dr. Jackson's findings.  (AR 104–06, 118–20.)

3   **B.      Social Security Administration Interview Notes**

4           On January 25, 2017, T. Smith, an SSA employee, interviewed Plaintiff over the phone in

5   conjunction with her application for disability benefits.  (AR 232–33.)  Smith observed that Plaintiff

6   had no difficulty with hearing, breathing, understanding, coherency, and concentrating.  (AR 232.)

7   Smith noted that Plaintiff did have difficulty with talking and answering, specifically that she "had

8   a delayed response" and "she stuttered her words."  (AR 232.)

9   **C.      Plaintiff's Adult Function Reports**

10          **1.      Plaintiff**

11          On February 1, 2017, Plaintiff completed an adult function report.  (AR 257–65.)  Plaintiff

12  indicated that she is able to take care of her pet birds on her own, tend to her personal care and take

13  medication without reminders, prepare simple meals, do light household chores for thirty minutes,

14  take public transportation, go grocery shopping twice a month, handle her own finances, watch

15  television, and talk to her friends and family over the phone.  (AR 258–61.)  Plaintiff also plays

16  bingo sometimes, but she "need[s] help."  (AR 261.)  She needs reminders to go places, and her

17  fiancé accompanies her to her weekly doctors' appointments.  (AR 261.)

18          According to Plaintiff, she is unable to lift, squat, bend, stand, reach, walk, or kneel.  (AR

19  262.)  Her impairments affect her memory, concentration, understanding, and ability to complete

20  tasks.  (AR 261.)  Plaintiff stated that she cannot walk "even a block" and must rest for 20 to 30

21  minutes before she can resume walking.  (AR 261.)  Plaintiff has difficulties paying attention and

22  following instructions (written or spoken).  (AR 261.)  She gets along well with authority figures

23  but cannot handle stress or changes in routine.  (AR 263.)

24          **2.      Plaintiff's Fiancé**

25          On February 1, 2017, Plaintiff's fiancé Sanchez submitted an adult function report on

26  Plaintiff's behalf.  (AR 235–42.)  Sanchez stated that Plaintiff helps him feed their pet birds once a

27  week.  (AR 236.)  Sanchez also indicated that Plaintiff is able to attend to her own personal care,

28  take medications without reminders, prepare simple meals daily, complete "simple" household

chores such as doing dishes, take public transportation, go grocery shopping, go out alone, handle her finances, watch television, go for short walks in the apartment complex, and spend time with friends and family.  (AR 237–39.)  Plaintiff cannot drive or do house or yard work.  (AR 238.) Sanchez stated that Plaintiff needs to have things explained to her sometimes and she does not follow written or spoken instructions well.  (AR 239, 240.)  Sanchez also stated that Plaintiff gets along well with authority figures, but she does not handle stress well.  (AR 241.)

**D.      Administrative Proceedings**

The Commissioner initially denied Plaintiff's applications for SSI and DIB benefits on March 6, 2017.  (AR 127.)  Plaintiff's application for DIB benefits was denied again on reconsideration on June 19, 2017.  (AR 136.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 141.)  At the hearing on June 14, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 39–54.)

**1.      Plaintiff's Testimony**

Plaintiff testified that she was enrolled in special education classes from the third to twelfth grades because she is a "slow learner."  (AR 39, 54.)  She graduated high school.  (AR 39.)  Plaintiff can read "Dr. Seuss type books," but not a newspaper.  (AR 47–48.)  Writing is more difficult than reading.  (AR 48.)  Plaintiff stated that she also has anxiety and depression and experiences panic attacks daily.  (AR 50.)  According to Plaintiff, she has to lie down or rest for three to four hours before she feels well enough "to go out and do things."  (AR 51.)  She is currently seeing a licensed clinical social worker once a month.  (AR 48.)  Plaintiff had been scheduled to see a psychiatrist, but the visit did not occur after she was ten minutes late to the appointment.  (AR 49.)  Plaintiff previously took medication for her mental health issues.  (AR 48.)

Plaintiff worked as a fast food worker for six-and-a-half years before she injured her back and was fired in 2012; Plaintiff ultimately received a workers' compensation settlement.[4]  (AR 39, 226.)  Her subsequent attempts at finding employment have been unsuccessful.  (AR 40–41.)

---

[4] The transcript of Plaintiff's testimony indicates that Plaintiff worked for 16.5 years (*see* AR 39), rather than 6.5, and this appears to be a transcribing error.  (*See* AR 226 (indicating that Plaintiff worked as a fast food cashier from 2005 to 2012).)

Plaintiff stated that she was born with scoliosis and has always had back pain, which was exacerbated after her work injury.  (AR 42.)  According to Plaintiff, she has constant "[s]harp shooting pains" in her lower-to-middle back.  (AR 42–43.)  Three weeks prior to the hearing, Plaintiff's fiancé gave her a non-prescribed cane.  (AR 43.)  Plaintiff stated that her doctor had declined to prescribe her a cane because her insurance would not cover it.  (AR 43.)  Plaintiff lies down for more than fifty percent of the day and takes medication to relieve her back pain; she also takes hot baths.  (AR 44–45.)  Plaintiff does not use heat or ice when lying down because she does not own a heating pad and does not have money to buy ice trays from the dollar store.  (AR 44.)  She has never had back surgery, nor has any doctor ever discussed surgery with her.  (AR 44–45.)  Plaintiff testified she also has foot pain, can stand for only fifteen minutes at a time and can sit for only fifteen minutes before she must elevate her feet.  (AR 46.)

Plaintiff testified that she lives in an apartment with her fiancé.  (AR 41.)  During the day, she spends most of her time watching television in the living room.  (AR 52.)  Once every two weeks, Plaintiff visits a friend that lives in the same apartment complex for about an hour.  (AR 52–53.)  Plaintiff has traveled to Redding via train to visit her mother, and during the two-to-three-hour trip, Plaintiff elevated her feet.  (AR 47.)  Because of her impairments, Plaintiff no longer goes to church, parks, or the movies.  (AR 53.)

### 2.   Richard Cohen, M.D.'s Testimony

Dr. Cohen testified as an impartial medical expert.  (AR 26, 55–59.)  He had never examined or treated Plaintiff.  (AR 55.)  In preparation for his testimony, Dr. Cohen reviewed Plaintiff's medical records.  (AR 55–56.)  Dr. Cohen assessed Plaintiff with borderline intellectual functioning, a learning disorder not otherwise specified, major depressive disorder, and anxiety disorder "with probable panic disorder."  (AR 57.)  He opined that Plaintiff had "marginal ability" to adapt to the stress of work and that Plaintiff  was moderately to markedly impaired in her ability to utilize and apply information and maintain concentration, persistence, and pace; and moderately impaired in her ability to interact with others and adapt and manage herself.  (AR 58.)

### 3.   Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a fast-

food worker, Dictionary of Operational Titles ("DOT") code 311.472-010, which was light work, with a specific vocational preparation ("SVP")[5] of 2.  (AR 60.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and work experience.  (AR 60.)  The VE was also to assume this person could: lift/carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour work day; occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes, and scaffolds.  (AR 60–61.)  The person also had to avoid concentrated exposure to extreme cold and damp work environments.  (AR 61.)  The VE testified that person would be able to perform Plaintiff's past work.  (AR 61.)

The ALJ asked the VE, in a second hypothetical, to consider the person in the first hypothetical, but with the additional limitation that the person could perform simple one-and-two-step tasks.  (AR 61–62.)  The VE testified that such a person could not perform Plaintiff's past relevant work but could perform other light jobs with an SVP of 2 in the national economy, such as assembler, DOT code 712.687-010, and sorter, DOT code 222.687-014.  (AR 62.)[6]

**E.     The ALJ's Decision**

In a decision dated October 31, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 16–28.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 18–28.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, the onset date (step one).  (AR 18.)  At step two, the ALJ found Plaintiff's following impairments to be severe: chronic thoracolumbar musculoligamentous strain/sprain likely associated with degenerative disc disease, scoliosis of the spine, major depressive disorder, anxiety disorder, and learning disability.  (AR 18.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 19.)

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over ten years of preparation).  *Id.*
[6] The ALJ subsequently asked the VE two more hypotheticals.  (AR 62.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently[;] stand/walk six hours in an eight-hour workday[;] sit six hours in an eight-hour workday[;] occasional climbing of stairs and ramps, balancing, kneeling, stooping, crouching and crawling; never climbing ladders, ropes, or scaffolds; should avoid concentrated exposure to extreme cold and damp work environments; and is able to perform simple, one and two-step tasks.

(AR 20.)[7] Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 23.)

The ALJ determined that, given her RFC, Plaintiff was not able to perform her past relevant work as a fast food worker (step four). (AR 26.) The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically assembler and sorter (step five). (AR 27.)

On November 19, 2018, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review. (AR 1, 200–02.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III.    LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[7] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).   "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

   "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).   Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

   In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

   Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)

1    (citations omitted).

2                              **IV.      DISCUSSION**

3            Plaintiff contends that the ALJ erred in three ways.  First, Plaintiff claims that the ALJ's

4    mental and physical RFC determinations are not supported by substantial evidence because the ALJ

5    erred in evaluation of medical opinion evidence.  (Doc. 17 at 12–17.)  Second, Plaintiff asserts that

6    the ALJ improperly discounted Plaintiff's testimony regarding her subjective complaints and lay

7    evidence.  (Doc. 17 at 19–26.)  Lastly, Plaintiff contends that the ALJ's erroneously determined at

8    step five that Plaintiff could perform work that exists in significant numbers in the national

9    economy.  (Doc. 17 at 17–19.)  For the reasons stated below, the Court determines that the ALJ

10   properly evaluated the medical opinion, testimonial, and lay evidence, but erred in determining that

11   Plaintiff could perform other work at step five.

12   **A.      The ALJ Properly Considered Plaintiff's Statements and Testimony**

13           **1.      Legal Standard**

14           In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ

15   must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First,

16   the ALJ must determine whether the claimant has presented objective medical evidence of an

17   underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Id*.  The

18   claimant is not required to show that their impairment "could reasonably be expected to cause the

19   severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused

20   some degree of the symptom."  *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.

21   2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only

22   reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and

23   convincing reasons" for the rejection.  *Id*.  As the Ninth Circuit has explained:

24           The ALJ may consider many factors in weighing a claimant's credibility, including
             (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
25           for lying, prior inconsistent statements concerning the symptoms, and other
             testimony by the claimant that appears less than candid; (2) unexplained or
26           inadequately explained failure to seek treatment or to follow a prescribed course of
             treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported
27           by substantial evidence, the court may not engage in second-guessing.

28   *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v.*

                                              13

*Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

## 2.   Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 23.)   The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 23.)  Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

The ALJ provided several reasons for discounting Plaintiff's testimony: (1) Plaintiff's asserted limitations were inconsistent with her activities of daily living; (2) Plaintiff continued to look for employment after her alleged onset date despite alleging disabling symptoms; (3) Plaintiff received routine and conservative care for her impairments; and (4) Plaintiff's statements were inconsistent with the medical evidence and other evidence in the record.  (AR 21, 23.)  The Court finds that the ALJ provided a clear and convincing reason for discounting Plaintiff's statements and credibility and thus did not err.

### a.   Activities of Daily Living

It is appropriate for an ALJ to consider a claimant's activities that undermine claims of

severe limitations in making the credibility determination.  *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (an ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities.).  A claimant need not "vegetate in a dark room" to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  However, if a claimant can spend a substantial part of the day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

According to Plaintiff, she has difficulty with lifting, squatting, bending, standing, reaching, walking, and kneeling.  (AR 262.)  She lies down for more than fifty percent of the day to relieve her back pain, can sit or stand for only fifteen minutes at a time, and cannot walk "even a block." (AR 44–45, 46, 261.)  Plaintiff also stated her impairments affect her memory, concentration, understanding, and ability to complete tasks; she has difficulty paying attention and following instructions (written or spoken).  (AR 261.)  In evaluating Plaintiff's credibility, the ALJ stated that Plaintiff had "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," such as being able to

> live with her fiancé, attend to her personal care without problems, take care of pet birds, remember to take her medications and attend to her personal care without reminders, prepare simple meals on a daily basis, wash dishes, do light household chores, use public transportation, take the train to visit her mother in Redding, go out alone, shop in stores for groceries twice a month, go to bingo occasionally, talk to family and friends over the phone every weekend, present for her medical appointments every week with her fiancé, get along well with authority figures, pay bills, count change, manage her food stamps, handle a checking and savings account, and watch television.

(AR 21, 23.)

The Court finds that the ALJ failed to explain how Plaintiff's daily activities are inconsistent with her testimony of her disabling symptoms.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("The ALJ must make specific findings relating to [the daily] activities and their transferability to

1    conclude that a claimant's daily activities warrant an adverse credibility determination.") (internal

2    quotation marks and citation omitted); *Cooper*, 815 F.2d at 561.  Plaintiff's testimony that she can

3    do light household chores, prepare simple meals, and attend to her own personal care appears

4    consistent with the pain and limitations that Plaintiff describes.  (AR 259.)  The Court notes that, in

5    describing Plaintiff's activities, the ALJ omitted Plaintiff's testimony that Plaintiff elevated her legs

6    on the train ride to Redding, that she "need[s] help" when playing bingo, and that, although Plaintiff

7    could go out alone, it was "not that often" that she went outside.  (AR 47, 260, 261.)  *See Garrison*,

8    759 F.3d at 1015–16 (holding that the ALJ erred by mischaracterizing the claimant's testimony

9    about her reported daily activities).

10    Moreover, that Plaintiff can handle her minimal finances and shop for groceries twice a

11    month (AR 260–61) does not on its face demonstrate that Plaintiff has the necessary capabilities to

12    work a full-time job.  After listing Plaintiff's activities, the ALJ stated only that "[t]his evidence is

13    inconsistent with [Plaintiff's] alleged severity of the symptoms and limitations," and did not offer

14    any further explanation as to why Plaintiff's limited activities were inconsistent with her testimony

15    or how the activities met the threshold for transferable work skills.  Accordingly, the inconsistencies

16    that the ALJ identified between Plaintiff's daily activities and her pain testimony do not constitute

17    a clear, convincing, and specific reason to discount Plaintiff's testimony regarding her disabling

18    symptoms and limitations.

19         **b.  Attempts to Look for Employment**

20    The ALJ also discredited Plaintiff because "she continued to look for employment after the

21    alleged onset date but was unsuccessful in receiving calls from potential employers."  (AR 23.)  The

22    mere fact that Plaintiff attempted to find a job, however, is insufficient to discount her statements.

23    *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("That [the claimant] sought employment

24    suggests no more than that he was doing his utmost, in spite of his health, to support himself.").  The

25    record reflects that Plaintiff had limited financial resources, evidenced by Plaintiff's testimony that

26    she receives food stamps and is unable to afford ice trays from the dollar store.  (AR 44, 54.)  Thus,

27    Plaintiff was merely doing her best to support herself, and her attempt to find employment is not a

28    clear-and-convincing reason to discount her credibility.

### c.   Routine and Conservative Care

Another reason given by the ALJ for discrediting Plaintiff's subjective statements is that "the record reflects that [Plaintiff] received minimal treatment for her impairments and treatment that was overall routine and conservative in nature." (AR 23.)  An ALJ may properly rely on the fact that only conservative treatment has been prescribed.  *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment).  The ALJ noted that, although Plaintiff complained of disabling back pain (AR 21), her pain was treated with only pain medications and two months of physical therapy in March and April 2017.  (AR 372, 378–400.)  At the hearing, Plaintiff testified that no doctor has ever suggested surgery for her back, and that she lies down and takes medication and warm baths to relieve her back pain.  (AR 44–45.)  Based on the foregoing, the ALJ did not err in finding that Plaintiff received conservative treatment for her physical impairments and properly discounted Plaintiff's credibility on that basis.  *See, e.g.*, *Tommasetti*, 533 F.3d at 1040 (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"); *Jones v. Comm'r of Soc. Sec.*, No. 2:12–cv–01714–KJN, 2014 WL 228590, at *7–10 (E.D. Cal. Jan. 21, 2014) (the ALJ properly found that the claimant's conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished the claimant's credibility).

As for Plaintiff's mental impairments, Plaintiff commenced psychotherapy with LCSW Vigil in at the end of January 2017, with appointments through March 2017 when Plaintiff stopped treatment.  (AR 336, 351–64.)  Plaintiff reported some improvement with her anxiety and depression through the use of deep breathing and visual grounding techniques.  (AR 354, 360.)  In November 2017, Dr. Halappa advised Plaintiff to follow up with counseling and prescribed Lexapro after Plaintiff reported increased anxiety after a neighbor threatened her.  (AR 407, 409.)  In March 2018, Plaintiff met with LCSW Vigil for an intake session after an exacerbation in her symptoms due to recent news that she might lose her home and the death of her grandfather.  (AR 415.)  At the second

part of her intake session in April 2018, Plaintiff reported mild improvement with Lexapro, though she continued to experience residual symptoms.  (AR 433.)  Plaintiff also informed LCSW Vigil that she no longer wanted to be referred to a psychiatrist.  (AR 429–30.)  Plaintiff saw LCSW Vigil again in May 2018. (AR 437.)  At the hearing, Plaintiff testified she was no longer taking medication for her mental health issues.  (AR 48.)  The Court finds that, although Plaintiff has sought mental health treatment, the ALJ correctly noted that the treatment was conservative, consisting of occasional therapy—the return to which appears to be triggered by major stressful events in Plaintiff's life (*e.g.*, being threatened by her neighbor and the death of her grandfather)—and limited use of medication.

Accordingly, the ALJ's adverse credibility determination based on Plaintiff's conservative treatment for her physical and mental impairments will not be disturbed.

### d.  Inconsistency with the Medical Record

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of . . . testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'"  *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680); *see, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (a claimant's testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence).  Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in h[er] credibility analysis."  *Burch*, 400 F.3d at 681.

The ALJ discounted Plaintiff's testimony regarding the severity and limiting effects of Plaintiff's symptoms in part because Plaintiff's complaints were inconsistent with the objective medical evidence.  (AR 23.)  Specifically, the ALJ pointed (AR 21–22) to Plaintiff's physical examinations that documented tenderness and pain with range of motion but also findings of normal muscle strength, sensation.  (AR 321–22, 327.)  In May 2018, Dr. Halappa noted that Plaintiff's back condition was stable and not disabling.  (AR 444.)  The ALJ also noted the "generally unremarkable" findings at Plaintiff's mental status examinations, other than notations of

"occasional[] depressed and/or anxious mood and depressive preoccupations or ruminations."  (AR 337, 409, 417, 434.)

Although the record contains evidence of repeatedly normal examinations and mental status findings, the ALJ failed to specify what parts of this medical evidence undermined Plaintiff's subjective symptom testimony.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Under *Brown-Hunter*, the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a claimant's credibility.  806 F.3d at 494.  Instead, the ALJ must link the medical evidence at issue to the Plaintiff's testimony. *Id*.  The Court finds that the ALJ did not do so here.

This error, along with the ALJ's inclusion of other invalid reasons for discounting Plaintiff's testimony, however, is harmless because the ALJ provided a valid reason—Plaintiff's conservative care—for finding Plaintiff not credible.  *See Molina*, 674 F.3d at 1121 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

### 3.     Harmless Error Analysis

In addition to bearing the burden of showing she is disabled, Plaintiff also has the burden of establishing that any error resulted in actual harm.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054–55 (9th Cir. 2012).  An "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination."  *See Molina*, 674 F.3d at 1115 (internal quotation marks and citations omitted). Even assuming the ALJ erred in discounting Plaintiff's testimony about her mental impairments, the error was harmless as Plaintiff has not set forth the functional limitations to which she testified that were not accounted for in the ALJ's mental RFC determination, and limit her to "simple, one and two-step tasks" (AR 20).  Plaintiff does not identify what portion of her testimony the ALJ should have credited or what additional limitations should have been included in her mental RFC, nor does she explain how the ALJ's mental RFC determination is inconsistent with her testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout*, 454 F.3d at 1055 (error harmless where it is non-prejudicial to claimant or irrelevant to the ALJ's ultimate

1    disability conclusion).

2    **B.**       **The ALJ Did Not Harmfully Err in Considering the Lay Evidence**

3            **1.**       **Plaintiff's Fiancé Sanchez**

4            An ALJ must consider the statements of lay witnesses in determining whether a claimant is

5    disabled.  *Stout*, 454 F.3d at 1053.  Lay witness evidence cannot establish the existence of medically

6    determinable impairments, but lay witness evidence is "competent evidence" as to "how an

7    impairment affects [a claimant's] ability to work."  *Id.*; 20 C.F.R. § 416.913.  The ALJ "must give

8    reasons that are germane to each witness" for rejecting lay witness statements.  *Nguyen v. Chater*,

9    100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks and citation omitted).  If the ALJ

10   gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those

11   reasons when rejecting similar testimony by a different witness.  *Molina*, 674 F.3d at 1114.

12           In weighing Sanchez's statements, the ALJ explained:

13           The statements made by Mr. Sanchez appear overall to be a repetition of the
             subjective complaints already reported by [Plaintiff].  However, as discussed above,
14           [Plaintiff's] allegations are not fully supported due to the inconsistencies in the
             record as a whole.  Accordingly, I find Mr. Sanchez's statements are also not fully
15           supported.

16   (AR 491.)

17           Pointing in part to the "child-like printing" and spelling errors in her own adult function

18   report—compared to Sanchez's statement written in cursive—Plaintiff contends that the ALJ erred

19   in finding that Sanchez's statement was a "repetition" of Plaintiff's statement.  (Doc. 17 at 25.)  The

20   Court has reviewed both statements and finds that the statements are substantially similar.  Both

21   Plaintiff and Sanchez indicated that: Plaintiff is able to take care of her pet birds, tend to her personal

22   care and take medication without reminders, prepare simple meals, do light household chores, take

23   public transportation, go grocery shopping, handle her own finances, watch television, and talk to

24   her friends and family over the phone; Plaintiff has difficulties paying attention and following

25   instructions (written or spoken); she gets along well with authority figures but cannot handle stress

26   or changes in routine.   (AR 236–41, 258–63.)   Plaintiff does not specifically identify what

27   limitations Sanchez alleged that should have been accepted by the ALJ.

28

Given that Sanchez's statement was similar to Plaintiff's statement, the same reason proffered by the ALJ for rejecting Plaintiff's statement is germane to the rejection of Sanchez's statement.  As mentioned above, the ALJ properly rejected Plaintiff's testimony on the grounds that it was inconsistent with the routine and conservative care that Plaintiff received for her impairments. This reason equally applies to discounting Sanchez's statement, and any error by the ALJ in failing to more specifically address Sanchez's statement was harmless.  *Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.").

**2.      Social Security Administration Interviewer**

Plaintiff also claims that the ALJ erred by failing to address the "statement" of T. Smith, an SSA employee who interviewed Plaintiff by phone in January 2017.  (Doc. 17 at 31.)  Smith noted that Plaintiff had difficulty talking and answering—specifically that she "had a delayed response" and "she stuttered her words."  (AR 232.)  The Court finds no harmful error.

To qualify as a competent lay witness, the witness must have had sufficient contact with the claimant.  *See, e.g.*, *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (two week interaction with claimant did not qualify therapist as lay witness); *Smith v. Barnhart*, No. C 00–4185 SI, 2002 WL 485050, at *4 (N.D. Cal. Mar. 27, 2002) (agency interviewer not a lay witness given lack of contact with claimant); *Geer v. Colvin*, No. 6:12–CV–01796–KI, 2013 WL 5536870, at *10 (D. Or. Oct. 7, 2013) (same).  Here, Smith had only one interaction with Plaintiff by phone and it is unclear how long that interaction lasted.  It also appears that Plaintiff's counsel never alerted the ALJ to Smith's observations or raised the issue at the hearing.  *See Bolar v. Astrue*, No. ED CV 10-1748 PJW, 2011 WL 5036826, at *2 (C.D. Cal. Oct. 24, 2011) (questioning whether SSA employee qualified as a lay witness and advising that counsel "needs to alert the ALJ to the fact" "if she wants the ALJ to consider brief notations by an interviewer in a 415-page record").

Even assuming that the ALJ should have addressed Smith's observation, the Court finds the failure to do so harmless.  As noted by the Commissioner, Plaintiff never alleged she has a stutter or other speech impediment,  (Doc. 18 at 18), and fails to explain why Smith's observation is

relevant to, or how it would change the RFC or the ultimate non-disability determination. *Stout*, 454 F.3d at 1056.

## C.     The ALJ's RFC Determination Is Supported by Substantial Evidence

Plaintiff contends that the ALJ's mental and physical RFC determinations are not supported by substantial evidence because the ALJ erred in her evaluation of the medical opinion evidence. For the reasons explained below, the Court finds that the ALJ did not harmfully err and the RFC is supported by substantial evidence.

### 1.     Mental RFC

#### a.   Non-Examining Physician Dr. Cohen

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018).  In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason."  *Mora*, 2018 WL 636923, at *10. Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn*, 495 F.3d at 631 ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).  "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010).

Here, Dr. Cohen testified as an impartial medical expert who had not examined or treated

Plaintiff.  (AR 26, 55.)  Based on his review of Plaintiff's medical records, Dr. Cohen opined that Plaintiff was moderately to markedly impaired in her ability to utilize and apply information and maintain concentration, persistence, and pace; and moderately impaired in her ability to interact with others and adapt and manage herself.  (AR 58.)  Because Dr. Cohen was a non-examining physician, the ALJ was not required to provide "specific and legitimate reasons" supported by substantial evidence for discounting Dr. Cohen's opinion, as Plaintiff claims.  (*See* Doc. 17 at 13.) "The weight afforded a non-examining physician's testimony depends on the degree to which they provide supporting explanations for their opinions." *Ryan*, 528 F.3d at 1201.

In assigning "little weight" to Dr. Cohen's opinion, the ALJ stated that the opinion appeared "to have relied too heavily on [Plaintiff's] subjective statements," and was inconsistent with the objective medical evidence and Plaintiff's reported improvement with treatment.  (AR 26.)  With regard to reliance on Plaintiff's subjective statements, the ALJ pointed to Dr. Cohen's reference to Plaintiff's PHQ-9[8] score of 19 (AR 57)—indicating moderately severe depression—in support of his opinion, and the ALJ explained that the score was based on a "subjectively assessed screen for depression and . . . not based on the objective evidence."  (AR 26.)  *See Lim v. Saul*, No. 18–CV– 07519–VKD, 2020 WL 2557000, at *8 (N.D. Cal. May 20, 2020) ("the PHQ-9 questionnaire reflects [the claimant's] reported self-assessment").  As discussed above, the ALJ properly discredited Plaintiff's testimony about her subjective symptoms, and it was not error for the ALJ to discount Dr. Cohen's opinion based on its reliance on Plaintiff's subjective complaints.  *See Fair*, 885 F.2d at 605 (holding that physician's opinion may be disregarded if it is based on subjective complaints that have already been discredited).

The ALJ also explained that Dr. Cohen's opinion was inconsistent with the generally unremarkable findings at Plaintiff's mental status examinations and her reported improvement with treatment.  (AR 26.)  Although Plaintiff was observed to be anxious and depressed at various mental status examinations and therapy sessions, Plaintiff was also found to be engaged, cooperative, and

---

[8] PHQ-9 refers to a specific patient health questionnaire.  The PHQ-9 "is a[n] instrument for making criteria-based diagnoses of depressive and other mental disorders commonly encountered in primary care."  *Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL 4519952, at *2 (N.D. Cal. Sept. 19, 2018) (citing Kurt Kroenke, MD, et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen. Intern. Med. 606 (2001)) (internal quotation marks omitted).

fully oriented with appropriate mood and affect.  (AR 337, 409, 434.)  Plaintiff was also found to have average intelligence and cognition, insight, and judgment within normal limits.  (AR 337, 417, 434.)  As noted by the ALJ, Plaintiff also reported some improvement with her symptoms due to her medication and the use of deep breathing and visual grounding techniques.  (AR 354, 362, 433.)  An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  *Sousa*, 143 F.3d at 1244.  Therefore, the ALJ did not err in rejecting Dr. Cohen's opinion.

Plaintiff claims that the ALJ "simply disagreed with Dr. Cohen's interpretation of the psychiatric evidence and indulged her own lay view of Plaintiff's impairments."  (*See* Doc. 17 at 15.)  This contention is unavailing.  Dr. Cohen's opinion is contradicted by that of examining psychologist Dr. Pingitore, who opined that Plaintiff's communication skills and pace and persistence were adequate, and Plaintiff could respond appropriately to supervisors-co-workers, and the general public.  (AR 317.)  The ALJ afforded "great weight" to Dr. Pingitore's opinion, and Plaintiff does not contest that the ALJ's specific reasons for doing so are supported by substantial evidence.  Generally, "greater weight is accorded to the opinion of an examining physician than a non-examining physician."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).  "In fact, the opinion of a non-examining physician, without more, cannot constitute substantial evidence when the opinion conflicts with the opinion of an examining physician."  *Smith v. Berryhill*, No. SA CV 17–516–E, 2017 WL 5158633, at *1 (C.D. Cal. Nov. 6, 2017) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).  Given the reasons proffered by the ALJ and the ALJ's proper reliance on the opinion of the examining psychologist Dr. Pingitore, the Court concludes that the ALJ did not err in rejecting the opinion of the non-examining physician Dr. Cohen.

### b.  Licensed Clinical Social Worker Vigil

LCSW Vigil was Plaintiff's treating therapist.  (*See, e.g.*, AR 336–39, 351–64.)  On June 5, 2018, LCSW Vigil submitted a one-page psychiatric medical source statement on Plaintiff's behalf, opining that Plaintiff had "moderate" ability to maintain concentration and attention, withstand the stress and pressures associated with working, understand, remember, and carry out simple and

complex instructions, and receive and carry out instructions from supervisors; and "mild" ability to

deal with the public and relate and interact with co-workers.  (AR 403.)

In assigning "little weight" to LCSW Vigil's opinion, the ALJ stated:

> First, Ms. Vigil's opinion is quite conclusory and provides no explanation of the evidence upon which she relies, as she does not document positive findings to support the limitations assessed.  Second, the opinion is inconsistent with Ms. Vigil's own treatment records . . . . The opinion is also inconsistent with and unsupported by the evidence in the record as a whole . . . . [T]he opinion appears to rely quite heavily on [Plaintiff's] subjective report of symptoms and limitations and to uncritically accept as true most, if not all, of what the claimant reported.  However, as explained elsewhere in this decision, there exist good reasons to question the consistency of [Plaintiff's] subjective complaints with the objective evidence.

(AR 25–26.)

As an initial matter, the ALJ was not required to assess LCSW Vigil's opinion under the

standard applicable for a treating physician as Plaintiff contends (*see* Doc. 17 at 13).  Under the

regulations, only "licensed physicians and certain qualified specialists" are considered acceptable

medical sources.  20 C.F.R. § 404.1513(a); *see also Molina*, 674 F.3d at 1111.  Social workers are

not considered an acceptable medical source.  *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d

1217, 1223–24 (9th Cir. 2010).  Instead, social workers are "other sources," whose opinions are

given less weight than those from "acceptable medical sources," but who may help the ALJ

"understand how [the claimant's] impairment affects [the claimant's] ability to work."  *Lederle v.*

*Astrue*, No. 1:09–cv–01736–JLT, 2011 WL 839346, at *11 (E.D. Cal. Feb. 17, 2011) (citing *Gomez*

*v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996)); 20 C.F.R. §§ 404.913(d), 404.1513(d).  While

social workers are not "acceptable medical sources" for evidence of impairment, the ALJ still must

"provide reasons that are germane to the witness" when discounting their opinions.  *Hill v. Comm'r*,

No. 1:14–cv–01813–SAB, 2016 WL 5341274, at *2 (E.D. Cal. Sept. 23, 2016) (citing *Molina*, 674

F.3d at 1111).

Here, the ALJ provided several germane reasons for discounting LCSW Vigil's opinion.

First, the ALJ found that LCSW Vigil's opinion was "quite conclusory and provide[d] no

explanation of the evidence upon which she relies, as she does not document positive findings to

support the limitations assessed."  (AR 25.)  The ALJ may reject an "other source" opinion that is

brief, conclusory, and inadequately supported by clinical findings.  *Molina*, 674 F.3d at 1111–12.

Because LCSW Vigil's medical source statement consisted primarily of one word answers to the questions on the form and LCSW Vigil did not cite to specific findings or other evidence in the record to support her opinion, (*see* AR 403), the ALJ was entitled to reject her opinion.

Second, the ALJ reasoned that LCSW Vigil's opinion was inconsistent with her own treatment notes. (AR 25.)  Specifically, the ALJ explained that LCSW Vigil's assessed limitations conflicted with LCSW's regular notations that Plaintiff was cooperative, had average intelligence, and had no cognitive defects.  (AR 337–38, 417, 434.)  The ALJ further noted that other medical evidence in the record indicated that Plaintiff routinely had "generally remarkable mental status findings with the exception of occasionally depressed and/or anxious mood and depressive preoccupations or ruminations." (AR 25.)

Third, as with Dr. Cohen's opinion, the ALJ found that LCSW Vigil's opinion "rel[ied] quite heavily on [Plaintiff's] subjective report of symptoms and limitations." (AR 25.)  Because the ALJ rejected Dr. Cohen's opinion for the same reason, LCSW Vigil's reliance on Plaintiff's subjective complaints was also a "germane" reason for the ALJ to reject LCSW Vigil's opinion.  *See Kartje v. Comm'r of Soc. Sec. Admin.*, No. CV–18–03240–PHX–SMB, 2020 WL 5887495, at *4 (D. Ariz. Oct. 5, 2020).  Accordingly, the ALJ did not err in rejecting LCSW Vigil's opinion.

### 2.    Physical RFC

#### a.    Dr. Halappa

Plaintiff alleges—and the record reflects—that Dr. Halappa was her treating physician. (*See, e.g.*, AR 326–35.)  In his treatment notes on January 30, 2017, Dr. Halappa indicated that Plaintiff was "physically and mentally disabled for full time work."  (AR 334.)[9]  Plaintiff contends that the ALJ erred in failing to address this opinion. (Doc. 17 at 15–16.)  The Court finds that any error was harmless.  A physician's opinion on the ultimate issue of disability is not entitled to controlling weight because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work' " "are not medical opinions" under the Social Security regulations. 20 C.F.R. §§ 404.1527(e), 416.927(e).  An ALJ "is precluded from giving any special significance to the source; *e.g.*, giving a

---

[9] In May 2018, Dr. Halappa also noted that Plaintiff had been "persistently asking for disability for her back condition," and he declined to fill out paperwork for disability because he "d[id] not see her back condition as disabling. (AR 444.)

1   treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner,

2   such as the ultimate issue of disability.  SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996).  Here,

3   Dr. Halappa opined only that Plaintiff was disabled, and he did not articulate any specific functional

4   limitations on Plaintiff's ability to work. (*See* AR 334.) Because Dr. Halappa's opinion was

5   conclusory and addressed only the ultimate issue of disability—an issue reserved to the

6   Commissioner—the ALJ did not harmfully err in failing to address it.

7       Dr. Halappa also submitted a medical source statement on Plaintiff's behalf on March 29,

8   2018.  (AR 402.)  Dr. Halappa opined that Plaintiff could lift no more than 25 pounds for two to

9   three hours in an eight-hour day, sit for four hours at one time without rest or support, stand and/or

10  walk for four hours at one time without rest or support, sit for six hours over an eight-hour period,

11  and stand and/or walk for six hours over an eight-hour period.  (AR 402.)  Dr. Halappa also opined

12  that "due to chronic back pain, [Plaintiff] need[ed] breaks to rest her back."  (AR 402.)  The ALJ

13  ultimately assigned "great weight" to Dr. Halappa's "general assessment that [Plaintiff] could

14  perform light work."  (AR 24–25.)

15      Plaintiff contends that the ALJ erred in failing to include Dr. Halappa's limitation that she

16  needed breaks to rest her back in the RFC determination, or to otherwise provide legally adequate

17  reasons for the omission of such a limitation.  (Doc. 17 at 21.)  The ALJ is responsible for

18  "translating and incorporating clinical findings into a sufficient RFC."  *Rounds v. Comm'r Soc. Sec.*

19  *Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  "The ALJ's findings need only be consistent with, not

20  identical to, the limitations assessed by the relevant medical opinion."  *Michael G. C. v. Comm'r of*

21  *Soc. Sec.*, No. C18-5875 TLF, 2019 WL 6907790, at *4 (W.D. Wash. Dec. 19, 2019) (citing *Turner*,

22  613 F.3d at 1224).

23      Plaintiff does not challenge the ALJ's reliance on Dr. Halappa's opinion, and the ALJ found

24  that Plaintiff could perform light work with the sitting and standing/walking limitations opined by

25  Dr Halappa.  Plaintiff has not provided any evidence that the "breaks" mentioned by Dr. Halappa

26  are anything more than the standard breaks required to be provided by an employer.  Indeed, Dr.

27  Halappa opined that Plaintiff was able to sit for four hours at one time without rest or support and

28  stand and/or walk for four hours at one time without rest or support.  (AR 402.)  Because the ALJ's

RFC determination is consistent with, and sufficiently incorporates, Dr. Halappa's opinion, the ALJ did not err in his evaluation of the opinion. *See Michael G. C.*, 2019 WL 6907790, at *4 (finding that the ALJ did not err in failing to incorporate in the RFC or address a limitation that the claimant needed "adequate breaks and rest periods" from a medical opinion afforded great weight).

### b. Plaintiff's Asthma and Foot Pain

Plaintiff also claims that the ALJ erred in formulating the physical RFC because the ALJ failed to consider Plaintiff's asthma and foot pain. (Doc. 17 at 16–17.)  With regard to Plaintiff's alleged asthma, Plaintiff did not identify asthma as an impairment on her application for benefits. (*See* AR 225.)   Indeed, when the ALJ asked Plaintiff at the hearing whether she had physical problems other than her back pain that would keep her from working, Plaintiff did not mention asthma as an issue. (*See* AR 45–46.)  "Plaintiff has provided the court with no authority stating that when determining severe impairments or making the RFC assessment, the ALJ must consider conditions not identified in the application for benefits.  Plaintiff has therefore not shown legal error in the ALJ's failure to do so in this case." *Price v. Berryhill*, No. 16–CV–04624–NJV, 2017 WL 4224923, at *6 (N.D. Cal. Sept. 22, 2017).  Furthermore, Plaintiff has not articulated any additional restrictions on her ability to work resulting from her asthma. *See Valentine* 574 F.3d at 692 n.2; *Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability.").

As for Plaintiff's foot pain, the ALJ did not harmfully err in failing to address the impairment.  Plaintiff testified that she could only be on her feet for 15 minutes at a time because of her foot pain (AR 45–46), and the record reflects that the ALJ considered this limitation in making the RFC determination (AR 21 (ALJ noting Plaintiff's testimony that "she had difficulty . . . standing for more than about 15 minutes at a time")).  As explained above, the ALJ properly found Plaintiff's testimony to not be credible and did not include the limitation.  The state agency physicians also considered Plaintiff's foot pain and opined that she had the RFC to perform light work with restrictions (AR 73–75, 88–90, 104–06, 118–20), and the ALJ assigned "great weight" to those opinions and adopted a consistent RFC (*see* AR 24).  Plaintiff has not articulated any additional limitations based on her foot pain that should have been adopted by the ALJ.  Accordingly, Plaintiff

has not carried her burden to demonstrate harmful error by the ALJ.  *See Shinseki*, 556 U.S. at 409

(the burden of showing harmful error normally falls on the party challenging the determination).

**D.      The ALJ's Step Five Finding that Plaintiff Can Perform Other Work Is Not Supported by Substantial Evidence and Remand Is Warranted**

At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'"  *Zavalin v. Colvin,* 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson*, 60 F.3d at 1432).  Plaintiff contends that the ALJ erred in finding that Plaintiff was able to perform the jobs of assembler and sorter, both of which require Level 2 Reasoning, given that the ALJ's RFC determination limited her to performing simple, one- and two-step tasks.  (Doc. 17 at 17–19.)  The Court agrees.

The ALJ included a limitation in Plaintiff's mental RFC that she could perform "simple, one and two-step tasks."  (AR 20.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could perform at least two jobs: assembler and sorter.  According to the DOT, both of these jobs require Level 2 Reasoning.  DOT code 712.687-010 (assembler), 222.687-014 (sorter).

In *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015), the Ninth Circuit held that a limitation to one- and two-step tasks is incompatible with jobs requiring Level 2 Reasoning. *Id.* at 1003.  The Ninth Circuit observed that a limitation to one- and two-step tasks is more akin to Level 1 Reasoning, which "requires a person to apply commonsense understanding to carry out simple one-or-two step instructions." *Id.* at 1002–1003.  By contrast, a limitation to "simple, routine, or repetitive work" is consistent with Level 2 Reasoning.  *Zavalin*, 778 F.3d at 847.  Because the RFC here included the express limitation to one- and two-step tasks, Plaintiff was precluded from performing either of the jobs identified by the VE.

In contending the ALJ's error was harmless and attempting to distinguish *Rounds*, the Commissioner essentially asks this Court to ignore the ALJ's inclusion of the one- and two-step-task limitation in the RFC and conclude that Plaintiff was actually limited to "simple repetitive work."  (Doc. 18 at 19–21 ("Although the ALJ adopted a more restrictive RFC, the expert State

psychiatric consultants opined that Plaintiff had no more than moderate symptoms and could perform simple repetitive work, curing any error.").)  This the Court cannot do.

An RFC determination is within the exclusive province of the ALJ.  20 C.F.R. § 404.1527(d)(2); *see David P. v. Saul*, No. 3:19–CV–1506–BEN–AHG, 2020 WL 4593311, at *3 (S.D. Cal. Aug. 11, 2020).  As the Ninth Circuit stated in *Rounds*:

> There is no explanation in the record as to why . . . the ALJ may have believed that [the claimant's] specific limitation to 'one to two step tasks' should not be taken at face value.  As such, the record does not support a conclusion that the ALJ's failure to resolve this apparent conflict was harmless error.  This Court cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.

*Rounds*, 807 F.3d at 1004 (internal quotation marks and citations omitted).  Because the ALJ did not recognize the apparent conflict between Plaintiff's RFC and the demands of Level 2 Reasoning, the VE did not address whether the conflict could be resolved.  Remand is thus warranted so the ALJ can determine "whether there is a reasonable explanation to justify relying on the VE's testimony," *Rounds*, 807 F.3d at 1004, or whether there exist other jobs that Plaintiff could perform given her RFC.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Tara Fae Alexander and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __**March 10, 2021**__                    _____/s/ *Sheila K. Oberto*_____
                                                                    UNITED STATES MAGISTRATE JUDGE

30